**SO ORDERED.**

**SIGNED this 19th day of September, 2025.**

_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Christopher J. Rogers, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Case No. 25-80005 |
| _____ | ) | |

**OPINION AND ORDER SUSTAINING OBJECTION TO
POSTPETITION FEES UNDER RULE 3002.1(e), DENYING MOTION
FOR SANCTIONS UNDER RULE 3002.1(i), AND DENYING
CLAIM UNDER N.C. GEN. STAT. § 45-94**

This matter is before the Court on the Motion for
Determination of Postpetition Fees under Rule 3002.1(e), for
Sanctions Under Rule 3002.1(i), and for Claim Under N.C. Gen. Stat.
§ 45-94, filed by Debtor on July 24, 2025, ECF No. 34 (the
"Motion"),[1] as well as the Response filed by SIRVA Mortgage, Inc.,
("SIRVA") on August 19, 2025, ECF No. 37 (the "Response").  For

---

[1] On September 9, 2025, at hearing on the Motion, the parties stipulated to the
withdrawal of the claim for sanctions under Fed. R. Bankr. P. 3002.1(i), and
any claims arising under N.C. Gen. Stat. § 45-94.  ECF No. 41, at 0:00:40-
0:02:00.

the reasons stated herein, the Court will disallow the postpetition fees but will deny further relief.

## BACKGROUND

On January 3, 2025, Debtor commenced this case by filing a voluntary petition under chapter 13 of title 11.   ECF No. 1. Debtor listed an interest in his principal residence located at 2614 Snowbell Court, Leland, NC, (the "Real Property") owned as a tenant by the entirety with his non-filing spouse.   Id. at 8, Schedule A.  Prepetition, Debtor's non-filing spouse signed a promissory note with SIRVA in the principal amount of $183,200.00. Claim No. 26-1, at 7.  Debtor did not execute the promissory note. See id. at 9.  On the same day, Debtor and his non-filing spouse signed a deed of trust against the Real Property which secures the promissory note.   Id. at 11.  The deed of trust provides SIRVA with the authority to assess any amounts incurred by them in a legal proceeding that might affect their interest in the Real Property and/or rights under the Security Instrument – such as a proceeding in bankruptcy.   Id.[2]  On March 24, 2025, SIRVA filed Claim No. 26, asserting a secured claim in the amount of $166,015.01.   The parties agree that the promissory note was contractually current on the petition date.  ECF No. 34, ¶ 4; ECF

---

[2] N.C. Gen. Stat. § 6-21.2 permits notes and other evidence of indebtedness to provide for attorneys' fees, within limitations not applicable for purposes of this order.

No. 37, ¶ 12.  Despite being contractually current on the petition date, SIRVA's proof of claim asserts a prepetition arrearage of $435.59 consisting of "projected escrow shortage."  ECF No. 26-1, at 4.[3]

On May 27, 2025, Debtor filed an amended chapter 13 plan, ECF No. 25, which the Court confirmed on July 8, 2025.  ECF No. 32. Debtor served the plan properly on SIRVA at the address provided on SIRVA's proof of claim, see ECF No. 26, at 2, and SIRVA did not object to confirmation.[4]

On May 19, 2025, SIRVA filed a Notice of Postpetition Mortgages, Fees, Expenses, and Charges under Fed. R. Bankr. P. 3002.1(c), itemizing a single fee of $400.00 for "Bankruptcy/Proof of claim fees," incurred March 24, 2025 ("Notice of Postpetition Fees").  Claim No. 26.[5]  In addition to the Notice of Postpetition Fees sent to Debtor under Rule 3002.1, SIRVA sent purported notices

---

[3] The parties dispute whether this projected escrow shortage constitutes a prepetition arrearage.  ECF No. 34, ¶ 4; ECF No. 37, ¶ 12.  Regardless, it is not a default under the terms of the obligation.

[4] Debtor's confirmed plan does not provide for any payment by Debtor or by Trustee on Claim No. 26 of SIRVA.  See ECF No. 25.  Instead, the plan provides under the special provisions in the Local Form Plan, Section 9, that "Sirva Mortgage holds a first position lien on the property.  Debtor is not liable on the note.  Debtor's spouse makes the mortgage payments directly."  Id. at 5. Additionally, Trustee's website lists $0.00 in reference to SIRVA's claim for the monthly payment, principal paid, principal owed, claimed amount, and scheduled amount.

[5] Under Standing Order 25-02, the presumptive fee for a proof of claim for a real property secured by a debtor's principal residence is $400.00.

under N.C. Gen. Stat. § 45-91[6] to Debtor's non-filing spouse.  ECF
No. 34, at 4-8.  In these notices, SIRVA asserted that "the
following fees and costs have been assessed to the loan . . . ."[7]
The total charges purportedly assessed to the loan in the notices
sent to the non-filing spouse were $951.69 as follows:

```
01/22/2025 $75.00 BNK ATTY FEES
03/25/2025 $625.00 BNK ATTY FEES
04/30/2025 $51.00 BNK ATTY COSTS
6/10/2025 $0.69 BNK ATTY COSTS
6/10/2025 $200.00 BNK ATTY FEES
```

Id.

On July 24, 2025, Debtor filed the Motion, contending that
the Notice of Postpetition Fees and the N.C.G.S. Notices materially
conflict, that the conflict is the result of a "dual booking"
practice.  See ECF No. 34.  Relying on In re Peach, Debtor contends
that such a practice runs afoul of Fed. R. Bankr. P. 3002.1(c).
Id. ¶ 7; No. 21-30390, 2025 WL 930363 (Bankr. W.D.N.C. Mar. 25,
2025); see also In re Owens, No. 12-40716, 2014 WL 184781, at *3
(Bankr. W.D.N.C. Jan. 15, 2014).  Debtor requests that the Court
disallow the $400.00 fee sought in the Notice of Postpetition Fees

---

[6] N.C. Gen. Stat. § 45-91 requires any fee incurred by a servicer to be
"[a]ssessed within 45 days of the date on which the fee was incurred" and
"[e]xplained clearly and conspicuously in a statement mailed to the borrower at
the borrower's last known address within 30 days after assessing the fee,
provided the servicer shall not be required to take any action in violation of
the provisions of the federal bankruptcy code."

[7] The notices further state that they are "for informational and compliance
purposes only" and do not "constitute demand for payment in violation of the
automatic stay or the discharge injunction or an attempt to recover all or
any portion of the debt from you personally."  ECF No. 34, at 4-8; see also
ECF No. 37, ¶ 14 ("N.C.G.S. Notices").  The notices did not state that the
fees would not be enforced in rem against the residence.

and enter an order disallowing the Servicer from ever assessing the amounts in the N.C.G.S. Notices.

On August 19, 2025, SIRVA filed the Response, explaining that only the $400.00 fee charged in the Notice of Postpetition fees was recoverable based on the presumptive fee provided in Standing Order 25-02. ECF No. 37.[8] SIRVA contends that it did not violate Rule 3002.1[9] by sending the N.C.G.S. Notices despite the conflict with the Notice of Postpetition Fees because SIRVA did not intend to recover the amounts listed in those notices and thus, it would have been improper to include those amounts in the Notice of Postpetition Fees. Id.[10] Instead, SIRVA states that it sent the N.C.G.S. Notices to comply with N.C. Gen. Stat. § 45-91. Id. SIRVA contends that, it did not assert that the fees listed in the N.C.G.S. Notices were recoverable by sending the N.C.G.S. Notices to Debtor's non-filing spouse. Id. Thus, SIRVA argues it was not required under Rule 3002.1 to include those fees in the Notice of Postpetition Fees. Id. Nevertheless, SIRVA contends that N.C. Gen. Stat. § 45-91 requires it to "assess" to the account any fee

---

[8] Standing Order 25-02 provides for certain fees asserted by creditors that are presumptively reasonable. As with any presumption, the amounts are rebuttable by any party in interest based on the circumstances of any case.

[9] Rule 3002.1 requires the holder of a claim, secured by a chapter 13 debtor's principal residence, to file a detailed notice setting forth all post-petition fees, expenses, and charges it seeks to recover from the debtor or debtor's property.

[10] The Court agrees that including charges that are unrecoverable under applicable nonbankruptcy law in a notice under Rule 3002.1 would be both improper and violate the rule. See infra n. 23.

it incurs in connection with the mortgage, regardless of whether it ever intends to charge that fee to the account.  Id. Alternatively, SIRVA states that if the Court determines that by sending the N.C.G.S. Notices, SIRVA asserted that the fees included therein were recoverable and thus required to be included in the Notice of Postpetition Fees, SIRVA is willing to amend its Notice of Postpetition Fees to include all fees and costs incurred.  Id. Finally, SIRVA contends that the Supremacy Clause of the United States Constitution renders N.C. Gen. Stat. § 45-91 unenforceable because a creditor is "unable to assess a fee in compliance with N.C Gen. Stat. § 45-91 without assessing [that same] fee to be the borrower's responsibility in compliance with Federal Rule of Bankruptcy Procedure 3002.1."[11]  Id.

On September 16, 2025, SIRVA filed Creditor's Supplemental Brief, ECF No. 42, in which it argues that Loan Servicers are required to disclose information under other applicable federal regulations and applicable state law that would run afoul of Rule 3002.1(c) under the holding in Peach.  ECF No. 42, at 2 (citing 12 C.F.R. § 1024.36(a)(2023); N.C. Gen. Stat. § 53-244.110(6); N.C. Gen. Stat. 45-93).  Thus, SIRVA requests that the Court decline to follow Peach and Owens and deny Debtor's Motion in full.  Id.

---

[11] The Court will not address SIRVA's preemption claim.  The Debtor has withdrawn their claim under N.C. Gen. Stat. § 45-91.  Moreover, that statute requires compliance with its provisions so long as they do not violate the Bankruptcy Code.  N.C. Gen. Stat. § 45-91(1)(b).  See Peach, 2025 WL 930363, at *5.

**DISCUSSION**

## I.   SIRVA failed to provide information required by Rule 3002.1(c).

SIRVA filed a Notice of Postpetition fees asserting a single amount of $400.00 for "Bankruptcy/Proof of claim fees," Claim No. 26, and both parties agree that Rule 3002.1 applies in this case.[12] The sole question is whether the inconsistency between SIRVA's Notice of Postpetition Fees and the N.C.G.S. Notices amounts to a violation of Fed. R. Bankr. P. 3002.1(c).  It does.

Rule 3002.1 was promulgated in 2011 to resolve a growing problem in chapter 13 cases.  Debtors, after successfully completing their plan, found themselves in foreclosure proceedings due to undisclosed and unpaid post-petition charges and fees that accrued during bankruptcy.  See In re Gravel, 6 F.4th 503, 514 (2d Cir. 2021).  To remedy this problem, Rule 3002.1(c) requires the holder of a claim secured by a chapter 13 debtor's principal residence to file a detailed notice setting forth all postpetition fees, expenses, and charges that a creditor "asserts are recoverable against the . . . debtor's principal residence" within 180 days after the fees, expenses, or charges were incurred.  This

---

[12] Both parties take the position that Rule 3002.1 applies.  Therefore, the Court has assumed its applicability and does not address that issue.  See ECF No. 34, ¶ 12; ECF No. 37, ¶ 11 ("Debtor is not personally liable or a signatory to the promissory note securing the Claim of SIRVA Mortgage on the Real Property. . . .  Nonetheless, the Property is the Debtor's principal residence, and Federal Rule[] of Bankruptcy Procedure [] 3002.1 is applicable to Creditor's Claim.").

requirement promotes transparency and clarity and is an essential safeguard to a debtor's fresh start. Rule 3002.1(e) implements the procedure to challenge a creditor's notice of postpetition fees. Under the rule, a debtor may file a motion challenging the proposed fees, and the court must determine whether the asserted fees are "required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments under § 1322(b)(5)." Fed. R. Bankr. P. 3002.1(c), (d) & (e). Subdivision (i) provides the bankruptcy court with the power to impose sanctions when the holder of a claim fails to provide any of the information required by subdivisions (b), (c), or (d). Fed. R. Bankr. P. 3002.1(i).

Two judges in our state have addressed similar issues regarding the interplay between Rule 3002.1 and N.C. Gen. Stat. § 45-91. See Owens, 2014 WL 184781 (Whitley, J.); and Peach, 2025 WL 930363 (Beyer, J.). In Owens, the creditor asserted that it did not intend to collect its post-petition assessed fees during the bankruptcy case, and it therefore did not have a duty to file a notice of the fees under Rule 3002.1. 2014 WL 184781, at *3. Rejecting that argument, the court held that Rule 3002.1 was triggered whenever fees were assessed – when the creditor intends to charge the fee is immaterial. Id. In Peach, the court came to a similar conclusion, finding that the Creditor "must file an FRBP 3002.1 notice with respect to post-petition fees during the

pendency of the case regardless of whether it intends to collect the fees during the case or at some point in the future." 2025 WL 930363, at *5.

N.C. Gen. Stat. § 45-91 does not provide to the contrary.[13] That section merely requires that a servicer timely assess and provide notice of any fee incurred in connection with the mortgage, or that fee is deemed waived. N.C. Gen. Stat. § 45-91(1) and (3). As explained further herein, appropriately read in light of both plain meaning and statutory purpose, the statute imposes mandatory time periods for assessments, not mandatory assessments as SIRVA contends. By arguing that N.C. Gen. Stat. § 45-91 requires it to "assess" any fee that it incurs, even if it has no intention of seeking to collect that fee either personally or in rem, SIRVA misconstrues the statute and stands its remedial intent on its head.[14]

---

[13] Even if N.C. Gen. Stat. § 45-91 were construed to include requirements that conflicted with Rule 3002.1, as applicable in this case, the statute specifically provides that its notice requirements do not apply if the servicer complies with the terms of the agreement in its application of payments, applies payments consistent with state and federal laws, "including bankruptcy laws," and the borrower is making payments "pursuant to a bankruptcy plan." N.C. Gen. Stat. § 45-91(2a).

[14] SIRVA also contends that Peach, when read alongside N.C. Gen. Stat. § 45-91, requires a servicer to first notice any waived fee to comply with § 45-91 and then requires a second notice of that waived fee to the Bankruptcy Court to comply with Rule 3002.1(c). SIRVA misreads Peach, rather than requiring any waived fees be noticed to the debtor and then, in turn, to the Bankruptcy Court, Peach requires servicers to file a Rule 3002.1 notice during the pendency of a case "*regardless* of whether it intends to collect the fees during the case or at some point in the future." 2025 WL 930363, at * 7. Nothing therein suggests the Court would require notice of waived fees. Instead, Peach adopts a "use it or lose it" approach to the fees. Either the servicer assesses the fee to the

SIRVA's interpretation of the statute is unreasonable, conflicts with both plain meaning and statutory purpose, and conflates the concepts of notice, notation, and assessment. An ordinary reading of the word "assessed," the statute's legislative history and purpose, as well as a broader review of N.C. Gen. Stat. § 45-91, along with its constituent parts, dispenses with SIRVA's argument. Chapter 45 of North Carolina's General Statue does not contain a definition for the term "assessed," and no North Carolina court has addressed this issue.[15] This Court previously has construed the language in N.C. Gen. Stat. § 45-91 to determine the meaning of "fee." See In re Paylor, 604 B.R. 222 (Bankr. M.D.N.C. 2019). There, the Court stated:

> The North Carolina Supreme Court adheres to the following principles of statutory construction:
>
>> In matters of statutory construction, our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished. Hunt v. Reinsurance Facility, 302 N.C. 274, 288, 275 S.E.2d 399, 405 (1981). Legislative purpose is first ascertained from the plain words of the statute. See Burgess v. Your House of Raleigh, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). Moreover, we are guided by the structure of the statute and certain canons of statutory construction.

---

loan and provides notice of the postpetition fee under Rule 3002.1(c), or they waive the ability to collect it under both the rule and applicable North Carolina law.

[15] Because state law controls, this Court "must . . . offer its best judgment about how [North Carolina's] highest court would rule [on the issue], giving appropriate weight to any opinions of [North Carolina's] intermediate appellate courts." See In re Paylor, 604 B.R. 222, 226 (Bankr. M.D.N.C. 2019) (citing Anderson v. Sara Lee Corp., 508 F.3d 181, 190 (4th Cir. 2007) (citations omitted)). "The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, the spirit of the act and what the act seeks to accomplish." State v. Langley, 371 N.C. 389, 395 (2018) (quoting Midrex Techs., Inc. v. N.C. Dep't of Revenue, 369 N.C. 250, 258 (2016)).

> See, e.g., Media, Inc. v. McDowell County, 304
> N.C. 427, 430-31, 284 S.E.2d 457, 461 (1981)
> ("statutes dealing with the same subject
> matter must be construed in pari materia");
> Builders, Inc. v. City of Winston-Salem, 302
> N.C. 550, 556, 276 S.E.2d 443, 447 (1981) ("It
> is presumed that the legislature intended each
> portion to be given full effect and did not
> intend any provision to be mere surplusage").

Elec. Supply Co. of Durham v. Swain Elec. Co., 328 N.C.
651, 656, 403 S.E.2d 291, 294 (1991). A court may
examine the legislative history of a statute only when,
after analyzing the plain terms and structure, the court
still is in doubt as to the legislative intent. Id. at
656, 403 S.E.2d at 295.

A statute's plain words are accorded their "natural and
ordinary meaning unless the context requires otherwise."
Turlington v. McLeod, 323 N.C. 591, 594, 374 S.E.2d 394,
397 (1988). That is, "[n]othing else appearing, the
[North Carolina] Legislature is presumed to have used
the words of a statute to convey their natural and
ordinary meaning." Perkins v. Ark. Trucking Servs.,
Inc., 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000)
(quoting In re McLean Trucking Co., 281 N.C. 242, 252,
188 S.E.2d 452, 458 (1972)). When "determining the plain
meaning of undefined terms," the Supreme Court of North
Carolina relies on "'standard, nonlegal dictionaries' as
a guide." Midrex Techs., Inc. v. N.C. Dep't of Revenue,
369 N.C. 250, 258, 794 S.E.2d 785, 792 (2016) (quoting
Elec. Supply Co., 328 N.C. at 656, 403 S.E.2d at 294)
(consulting New Oxford American Dictionary (Angus
Stevenson & Christine A. Lindberg eds., 3d ed. 2010)
("New Oxford") to interpret the meaning of the term
"building" in § 105-130.4(a)(4)); see also Turlington v.
McLeod, 323 N.C. 591, 594, 374 S.E.2d 394, 397 (1988)
(citing Webster's Third New International Dictionary
2394 (1976) ("Webster's") and The American Heritage
Dictionary of the English Language 1345 (1969) for a
definition of "timber" that, in ordinary usage, gave
effect to the statute's intent); Black v. Littlejohn,
312 N.C. 626, 638, 325 S.E.2d 469, 478 (1985) (citing
Webster's (1971)) for a definition of "injury"). For
terms commonly used in a legal and nonlegal context, the
North Carolina Supreme Court also has relied on Black's
Law Dictionary. See, e.g., Walker v. Bd. of Trs. of the

N.C. Local, Governmental Emps.' Ret. Sys., 348 N.C. 63,
66, 499 S.E.2d 429, 431 (1998) (citing Black's Law
Dictionary 1471 (6th ed. 1990) for a definition of
"terminate" as used in chapter 128 of the North Carolina
General Statues because "this word is unambiguous");
Nelson v. Battle Forest Friends Meeting, 335 N.C. 133,
136, 436 S.E.2d 122, 124 (1993) (relying on Deluxe
Black's Law Dictionary 41 (6th ed. 1990), in addition to
The Random House Dictionary of the English Language 25
(2d ed. 1987) ("Random House"), Chambers English
Dictionary 16 (1988), and The Oxford English Dictionary
156 (2d ed. 1989), for definitions of the term "adjoin"
as used in § 1-44.2).

Finally, the court should "look at various related
statutes in pari materia so as to determine and
effectuate the legislative intent." Craig v. Cty. of
Chatham, 356 N.C. 40, 46, 565 S.E.2d 172, 176 (2002);
cf. In re R.L.C., 361 N.C. 287, 294, 643 S.E.2d 920, 924
(2007) ("When determining the meaning of a statute, the
purpose of viewing the statute in pari materia with other
statutes is to harmonize statutes of like subject matter
and, if at all possible, give effect to each.")

604 B.R. at 226-27.

Webster's Dictionary defines "assess" as "1. To estimate the

value of (property) for taxation; 2. To set or determine the amount

of (e.g., a tax or fine); 3. To charge (a person or property) with

special payment; 4. To appraise or evaluate." Assess, Webster's

II New Riverside University dictionary (2nd ed. 1995). Black's

Law Dictionary defines "assess" similarly, as "1. To calculate the

amount or rate of a (tax, fine, etc.). 2. To impose (a tax, fine,

etc.). 3. To determine the value of (something), esp. for tax

purposes. 4. To evaluate the importance, quality, or extent of

(someone or something)." ASSESS, Black's Law Dictionary (12th ed.

2024).  In this case, the assessment is neither a calculation, nor a valuation.  It is the imposition of the fee.

When the legislature enacted the Mortgage Debt Collecting and Servicing Act, its primary objective was to "protect homeowners and reduce foreclosures."  See N.C. B. Summ., 2007 Reg. Sess. H.B. 1374.  To achieve that objective the Act "restricts the amount and conditions under which fees may be assessed by a servicer."  Id.[16] The Act was intended to establish *limits* on the assessment of fees, not to necessitate assessing them to loans that otherwise would not be charged.[17]  Requiring disclosure and notice of fees that will not be assessed is not only contrary to the ordinary and plain meaning of "assess," but it is also directly contrary to the remedial, limiting, and protective purpose of the statue.  See State v. Rankin, 371 N.C. 885, 889 (2018) ("if a literal interpretation of a word or phrase's plain meaning will lead to

---

[16] Construing the statutory meaning consistent with its history, as we must, the summary of the bill emphasizes the ordinary meaning of "assess" as a charge against the account, stating: "The borrower is entitled to one statement in a six-month period.  Thereafter, a charge for additional statements, of no more than $25.00, may be *assessed*."  N.C. B. Summ., 2007 Reg. Sess. H.B. 1374 (emphasis added).

[17] SIRVA alters the meaning of assessed, so that Servicers must include irrelevant and confusing information that has not been requested.  Not only is this unreasonable and contrary to the use of the word in the legislative history, but nothing in SIRVA's N.C.G.S. Notices disclaims SIRVA's ability to impose the fees later.  Instead, the notice only explains that it is not a request for payment and is provided for "informational purposes only."  ECF No. 37, ¶ 8. If SIRVA's intent was to waive the "assessed" fees, the language in the N.C.G.S. Notices is, at best, misleading.  Both Rule 3002.1 and N.C.G.S. § 45-91 were intended to prevent this type of confusion and potential harm to borrowers.

'absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control.'") (citation modified).  When the statute is read in its entirety, it is apparent that the consequence of not assessing an incurred fee is waiver of that fee.  N.C. Gen. Stat. § 45-91(3).  This comports with the ordinary and plain meaning of the statutory language and aligns with its purpose by making the time and manner of the assessment mandatory as a pre-condition of its enforceability, not mandating the assessment itself.

## II. SIRVA was not required by state or federal law to send the conflicting notices.

In its Supplemental Brief, SIRVA states that certain instances may arise where, at the borrower's request, SIRVA would have to inform the borrower of fees that SIRVA incurred in connection with the mortgage, but that it did not seek to recover. ECF No. 42.  SIRVA points to three separate federal and state laws, 12 C.F.R. § 1024.36(a)(2023);  N.C. Gen. Stat. § 53-244.110(6); N.C. Gen. Stat. § 45-93, purportedly requiring such notices.  None of these statutes are applicable in this case or require notices as argued by SIRVA.  Instead, each of these statutes permits a borrower to request information regarding her mortgage.[18]   This

---

[18] SIRVA argues that 12 C.F.R. § 1024.36(a) permits the borrower to request "all transaction activity," and that "unilaterally waived fees" would necessarily be included in that request.  See ECF. No. 42.  And, that information could not be excluded under 1024.36(f)(i)-(iv) as (i) duplicative, (ii) confidential, (iii) irrelevant, (iv) overbroad, or (v) untimely.  They also say the same is true

case does not involve an instance where the debtor requested the information directly from their servicer even though the notices were not required under N.C. Gen. Stat. § 45-91 because they had not been charged to the loan.  Nothing in the statutes relied on by SIRVA required the N.C.G.S. Notices.

At the hearing, counsel for SIRVA contended that the federal regulations require it to report all transactions related to the account, which would require the servicer to report a transaction in which it incurred any fees with respect to the mortgage—even if it had no intention of assessing those fees to the account.  ECF No. 41, at 00:20:08-00:20:50.  The transaction reporting does not have such a requirement.  Although federal regulations require servicers to report transactions, that requirement is limited to any amount "that causes a credit or debit to the amount currently due."  12 C.F.R. § 1026.41(d)(4) (2024).  Because the waived fee would result in neither credit nor debit on the amount currently due, there is no transaction to report, and no statutory conflict exists.

---

under N.C. Gen. Stat. § 53-244.110(6), which requires additional information. And the same is true of N.C. Gen. Stat. § 45-93, which requires a mortgage servicer to make reasonable attempts to comply with a borrower's request for information.

### III. <u>Peach</u> and <u>Owens</u> correctly state the requirements of Rule 3002.1.

Finally, SIRVA asks this Court to distinguish this case from <u>Owens</u> because the N.C.G.S. Notices conspicuously state that "fees have been assessed to your loan.  This notice is not a request for payment and is being provided to you for informational purposes only."  ECF No. 37, ¶ 8.[19]  The Court declines any rejection of <u>Owens</u>, SIRVA's interpretation of the language in its notices, and, as explained above, the applicability of the statute to fees that are not being assessed to the loan.  As the <u>Owens</u>' court recognized, "[r]ule 3002.1 does not turn on the subjective intent of the creditor."  2014 WL 184781, at *2.  Moreover, nothing about SIRVA's notice effectively disclaims their ability to impose the fees at a later date, and the fact that the putative assessment was made timely under North Carolina law and notice thereof timely given ostensibly preserves the right to assess the full fees against the Real Property in the future, having avoided any review of the fees by the bankruptcy court.  ECF No. 37, ¶ 8.[20]

This court adopts the reasoning of Judges Whitley and Judge Beyer in the <u>Owens</u> and <u>Peach</u> cases, respectively.  SIRVA filed its

---

[19] The notices in <u>Owens</u> read "fees have been assessed to your loan."  2014 WL 184781, at *3.

[20] "It would be much more difficult for a debtor to litigate these issues after her bankruptcy case, either in state court with a different attorney or by rehiring her bankruptcy attorney (or some other bankruptcy attorney) to reopen her case and litigate the issues in the bankruptcy court."  <u>In re Peach</u>, No. 21-30390, 2025 WL 930363, at *5 (Bankr. W.D.N.C. Mar. 25, 2025).

Postpetition Notice as required by Fed. R. Bankr. P. 3002.1 charging $400.00, it also sent the Debtor's non-filing spouse notices evidencing assessments of $951.69 in bankruptcy fees to her account. ECF No. 34, at 4-8. The disclaimer that it was intended to seek enforcement against her "personally" is insufficient and does not purport to waive the right to assess the fees to the account in the future or in rem. To the contrary, it states that the account has been assessed. Rule 3002.1(c) requires disclosure of any postpetition fees, expenses, or charges that the holder of the claim asserts to be recoverable against the debtor's principal residence. Failure to notify the Debtor of "all fees" that the holder contends are recoverable against the debtor or his property, as required by Rule 3002.1(c), is impermissible. See Rule 3002.1(i) ("If the holder of a claim fails to provide any information required by subdivision . . . (c) . . . the court may . . . (2) award other appropriate relief . . . ."). Therefore, by sending conflicting notices under North Carolina law during the pendency of a bankruptcy proceeding, SIRVA violated Rule 3002.1(c).[21] See In re Trevino, 615 B.R. 108, 131 (Bankr. S.D. Tex. 2020) ("In filing a 3002.1 notice, a responsible person must consider the specific facts and details and conclude that the

---

[21] To the extent that the N.C.G.S. Notices were intended to preserve SIRVA's ability to assess charges and fees in the event of dismissal, Debtor's failure to receive a discharge, or against the Real Property, that too is a violation of Rule 3002.1.

[notice] is actually necessary and warranted. . . . Whether [creditors] service a few loans, or a few million, it is not excused from conducting its due diligence"). In the future, SIRVA must file a Fed. R. Bankr. P. 3002.1 notice with respect to any postpetition fees incurred in connection with their claim after the bankruptcy case was filed that it asserts are recoverable against the debtor or the debtor's residence.[22]

As Judge Beyer explained, a contrary holding would frustrate the purpose of the rule and hamper the implementation of 11 U.S.C. § 1322(b)(5). Peach, 2025 WL 930363, at *5. Any adjustment of postpetition mortgage payments or fees must be noticed under Fed. R. Bankr. P. 3002.1, to permit the debtor or trustee to challenge the validity of the charges, and to avoid the hidden fee problem Rule 3002.1 was implemented to resolve.

SIRVA violated 3002.1(c) by failing to disclose the amounts assessed in the N.C.G.S. Notices. In addition to disallowing any undisclosed fees and prohibiting evidence of those fees from being offered in any proceeding in the bankruptcy case, the Court may

---

[22] SIRVA argues that this requirement will result in it filing notices under Rule 3002.1 for all fees incurred, even if it has no intention of assessing them to the account, and even if the amounts would not be recoverable. SIRVA concedes that only the $400.00 in the notice under Rule 3002.1 is recoverable in this case, and therefore similarly must concede that the fees over that amount in the N.C.G.S. Notice are not recoverable. Rule 3002.1 requires notice of any fees that the holder contends are recoverable. The Court will consider any objection to future notices and provide appropriate relief. See Peach, 2025 WL 930363, at *7 ("if [the creditor] is brought back before this court in this or another bankruptcy case on these or similar issues, it can expect that the court will consider imposing far steeper monetary sanctions.").

"award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure." Fed. R. Bankr. P. 3002.1(i)(2). Debtor has waived its request for attorneys' fees. Debtor seeks the disallowance of SIRVA's $400.00 and an order prohibiting SIRVA from ever assessing the amounts asserted in the N.C.G.S. Notices to the loan or against the Real Property.[23] For the reasons stated herein, the Court finds that SIRVA violated Fed. R. Bankr. P. 3002.1(c) by failing to file a notice in Debtor's bankruptcy case of the additional charges assessed in the N.C.G.S. Notices.[24] Therefore, the Court will disallow the amounts that were undisclosed and prohibit SIRVA from asserting the additional $551.69 against the Debtor's residence, and, as appropriate further relief, disallow the $400.00 fees in the notice under Rule 3002.1.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED that:

1. The fees asserted by SIRVA in its Notice of Postpetition

---

[23] As discussed above, the parties stipulated to the withdrawal of the claim for sanctions under Rule 3002.1(i) beyond disallowance of the fee. ECF No. 41, at 00:00:40-00:02:00. Therefore, the Court will address neither, nor will it impose additional sanctions under the Rule.

[24] SIRVA also suggests that amending the postpetition fees at this stage would cure their violation. Not so. SIRVA's fees are before the Court due to the Debtor's proactivity. SIRVA violated Rule 3002.1(c), providing the information at this stage will not cure the underlying defect. See Fed. R. Bankr. P. 3002.1(i) ("If the claim holder fails to provide any information as required by (b), (c), or (g), the court may, after notice and a hearing" disallow any evidence of the undisclosed fees).

Mortgage Fees, Expenses, and Charges, are disallowed.

2. SIRVA is prohibited from assessing to the account or otherwise seeking to recover any portion of the fees asserted in N.C.G.S. Notices against Debtor or his residence.

## Parties to be Served
### 25-80005

John Paul Hughes Cournoyer
U.S. Bankruptcy Administrator              Via CM/ECF

Anita Jo Kinlaw-Troxler
Chapter 13 Trustee                         Via CM/ECF

Koury Lee Hicks
Counsel for Debtor                         Via CM/ECF

Ryan Srnik
Counsel for SIRVA                          Via CM/ECF

Christopher J. Rogers
2614 Snowbell Court
Leland, NC 28451